ALBANY,
January, 1823.

THALIMER
v.
BRINKER-
HOFF.

## THALIMER against BRINKERHOFF.

*H. T.*, who claimed land as heir at law of his father, and who was about to commence suits to recover the possession of it, entered into an agreement with the plaintiff, who had married his sister, by which he covenanted, in consideration of the premises, &c., to convey to the plaintiff the one fourth part of the property which should be recovered; and the plaintiff, in consideration of such covenant, &c., promised *H. T.* to pay, bear, and sustain, the one half of all the expenses which might occur in the prosecution of the intended suits, &c. The defendant, who drew the agreement, and subscribed it as a witness, as attorney of *H. T.*, and the plaintiff, brought actions of ejectment against the persons in possession of the land; and, afterwards, by virtue of a power of attorney from *H. T.*, for that purpose, but without the knowledge of the plaintiff, compromised with the tenants, and received from them a large sum of money.

In an action of *assumpsit* for money had and received to the use of the plaintiff, brought by him to recover the one fourth part of the money so received by the defendant: *Held*, that the agreement between the plaintiff and *H. T.*, was illegal and void, under the first section of the act to prevent and punish *champerty* and maintenance; (sess. 24. ch. 87. 1 *N. R. L.* 172.) and that the plaintiff could not, therefore, recover against the defendant.

To make such a contract illegal and void, for *champerty*, it is not necessary that the land should be held adversely.

THIS was an action of *assumpsit*. The declaration contained the common counts, for money had and received to the plaintiff's use, money lent, &c., and an *insimul computassent*. Plea, *non-assumpsit*. The cause was tried at the *New-York* sittings, in *June*, 1821, before Mr. Chief Justice *Spencer*. At the trial, the plaintiff gave in evidence an agreement between him and *Henry R. Teller*, to which the defendant was a witness, and was drawn by him, or under his direction, dated *April* 10, 1807. This agreement recited, that whereas *H. R. Teller* is the heir at law of his father, *Isaac Teller*, deceased, and as such, laid claim to certain property situate in the city of *New-York*, fronting on *Broadway*, formerly known by the name of the " negro burying ground," and possessed by *J. Teller* in his lifetime; and whereas it was the intention of the said *H. R. T.*, to institute a suit, or suits, for the recovery of the whole, or part of the said property; and whereas *P. T.*, the plaintiff, intermarried with the sister of the said *H. R. Teller*, and in consequence of that connexion, became justly, though not legally, entitled to a portion of the said property; the agreement, therefore, witnessed, that *H. R. T.*, in consideration of the premises and covenants therein after contained, for himself, his heirs, &c., covenanted, promised, and agreed, with *P. T.*, the plaintiff, his heirs, &c., that on the recovery of the whole, or any part of the said property, he would execute to the plaintiff a good and lawful conveyance for one fourth part of the property recovered; and the plaintiff,

in consideration of the said promise, covenanted and agreed with *H. R. Teller*, that he, the plaintiff, would pay, bear, and sustain the one half of all the expenses that might occur in the prosecution of the suit or suits, to be instituted by *H. R. T.*, for the recovery of the property, if such suit or suits should prove unfortunate; but in case the suit or suits should prove successful, then to pay, bear, and sustain, one fourth of all the expenses; and it was agreed, that the expenses should be mutually advanced and borne by and between the parties, in the proportions above mentioned.

The plaintiff proved, that the defendant, as the attorney of the plaintiff, and *Henry R. Teller*, in *June*, 1809, commenced a number of ejectment suits against persons occupying different parts of the property mentioned in the agreement; and that the defendant, afterwards, without the knowledge of the plaintiff, by virtue of a power of attorney from *H. R. Teller*, compromised the suits with the respective tenants; and on such compromise, received 54,000 dollars, besides the costs of suit. The power of attorney, which was set forth in the bill of exceptions taken at the trial, was dated *November* 22d, 1813, and fully authorized the defendant to make compromises, and to sell and convey all such parts of the land claimed, and upon such terms as the defendant might think fit and proper. The plaintiff claimed one fourth part of the money thus received by the defendant, as so much money had and received to the use of the plaintiff, under and by virtue of the agreement between him and *H. R. T.*, and the retainer of the defendant, as their attorney, under it. The plaintiff having rested his cause, the defendant's counsel moved for a nonsuit, on the ground, that the agreement between the plaintiff and *H. R. T.* was unlawful, as being against the statute to prevent and punish champerty and maintenance, and, therefore, void. The Chief Justice was of opinion, that the agreement was unlawful and void, and could not, therefore, be the foundation of an action; and, accordingly, directed the plaintiff to be called and nonsuited. The plaintiff's counsel tendered a bill of exceptions to the opinion of the Chief Justice.

*S. Jones*, for the plaintiff, contended, 1. That the agree-

ment between the plaintiff and *H. R. Teller* was not un-lawful, nor against the statute to prevent and punish cham-perty and maintenance. *Maintenance* is an officious inter-meddling in a suit that no way belongs to one, by maintain-ing or assisting either party with money or otherwise, to prosecute or defend it. (4 *Bl. Com.* 134, 135.) It is an interference by one who is a perfect stranger, having no interest whatever in the subject of controversy, to the disturbance of the community, by stirring up suits. *Cham-perty* is merely a species of maintenance, for the conside-ration of having some part of the thing in dispute, or some profit out of it. The strictness and severity of the law, as found in the ancient cases, has, in later times, for very obvious reasons, been much relaxed ; so, that if the person accused of this offence can show that he has any affinity or re-lationship to a party, he may lawfully advise and aid him in his suit, by money, or otherwise. So, if he has any inte-rest whatever, legal or equitable, in the land in controversy, however contingent or remote it may be, he may maintain the party in the suit. (2 *Hawk. P. C.* B. 1. ch. 83. s. 1— 13. 17, 18. 21, 22. *Wickham* v. *Conklin*, 8 *Johns. Rep.* 220. 227. 3 *Burns' Justice*, 117.) Then, had not the plaintiff, in right of his wife, the sister of *H. R. Teller*, a possible or contingent interest in this land ? She might be-come heir to her brother, in case he died without issue.

2. This is not *champerty*, unless the party is in ad-verse possession. (8 *Johns. Rep.* 227, 228.) The agree-ment recites, that the ancestor of *H. R. T.* had a title to the land, and that *H. R. T.* was the owner. He, or the defendant, as his attorney, cannot be allowed any intend-ment as to an adverse title. (9 *Johns. Rep.* 102. 163. 174. 1 *Johns. Rep.* 156. 8 *Johns. Rep.* 220. 3 *Johns. Cases,* 124. 16 *Johns. Rep.* 293.) There is no evidence of an adverse possession ; and if there was none, it was a valid agreement to pass one third of the property to the plaintiff, or his wife, in consideration of blood.

3. But even, if this agreement was unlawful, neither *H. R. Teller*, nor the defendant, could take advantage of it. *Tel-ler* has received the full benefit of the agreement. It is good as between parties to it ; and is void only as against stran-gers, or third persons having right. But the tenants have

compromised, without taking any advantage of this objection to the agreement. (*Co. Litt.* 369. *a.*   *Cro. Eliz.* 445. *Hawk. P. C.* B. 1. ch. 86. *s.* 3.   9 *Johns. Rep.* 55.   2 *Roll. Abr.* 115.   *Bro. Abr. Feoff.* pl. 19.)   On what principle can *Teller,* or the defendant, be allowed to set up this defence ?   The ground of the plaintiff's action is, that the defendant has received money as his attorney; and the agreement was introduced collaterally, to show the amount to which the plaintiff was entitled.

*E. Williams* and *W. W. Van Ness,* contra.   1. The plaintiff cannot recover in this form of action.   The owners of aliquot shares of the money cannot maintain separate suits for their respective proportions.   The action is against the defendant as attorney, retained by *Teller* and the plaintiff jointly.   There is but one *assumpsit,* and only one suit can lie.   *Teller,* therefore, ought to have been joined with the plaintiff in the action.   This objection might have been made at the trial, for the defendant is not obliged to plead the misjoinder of plaintiffs in *assumpsit :* And though the objection was not, in fact, made at the trial, it may be raised here, for it is not a matter which, had it been stated, could have been supplied by the plaintiff at the trial. (*Beekman* v. *Frost,* 18 *Johns. Rep.* 544.)

2. *Assumpsit* for money had and received does not lie ; for by the agreement between *Teller* and the plaintiff, the latter was to have one fourth of the *land,* if recovered.   Nothing is said, by which it would appear that he was entitled to demand any *money.*   The plaintiff, therefore, should have brought an action against *Teller* for a breach of the contract.

3. The agreement was void, as against the statute to prevent champerty and maintenance.   Our statute provides for the prevention of the various offences of this nature to be found in the *English* statutes.   *Champerty* and maintenance are distinct offences.   A conveyance of a right of entry may be good, as between the parties, though void as to third persons ; but it is different as to *champerty ;* and the case of *Wickham* v. *Conklin,* (8 *Johns. Rep.* 227.) proceeds on the distinction.   The *first* section of the statute provides

against champerty, and the *eighth* and *ninth* sections against buying pretended titles, and maintenance. A father may support his son in a suit to recover his right; but he cannot *buy* of his son a portion of the subject matter of dispute, without violating the first section of the statute. No case can be found to show that such an agreement is lawful and valid between the parties. It is not necessary to prove an adverse possession in such a case; but if it were necessary, we contend, that the agreement expressly admits the fact of an adverse possession. The contract is, by the statute, illegal, corrupt, and void. The consideration of relationship, or affinity, cannot avail. No consanguinity can justify the buying of a part of the subject matter of a suit. The plaintiff, in right of his wife, had no interest whatever in the land, antecedent to, or independent of the agreement. Any supposed *natural* right in Mrs. *Thalimer*, cannot be recognised in a Court of law or equity, contrary to the law of descents, established by the legislature.

But it is said, that the defendant cannot set up this objection to the agreement, as a defence. He is not called upon for a defence, until the plaintiff brings a proper suit.—— Though under the 8th and 9th sections of the statute, the defendant might not be entitled to make the objection, yet he may, under the first section, which makes the agreement, as between the parties, void. The defendant stands in the place of *H. R. Teller*, in regard to this suit. Admitting the agreement to be valid, the *casus fœderis* between the parties to it has not occurred. The defendant received the money under the power of attorney from *Teller* alone, and to him only is he accountable for it.

*D. B. Ogden*, in reply, said, that the objection as to the form of the action, was not made at the trial, and could not, therefore, be raised here. Had it been made at the trial, the plaintiff might have shown a settlement among the parties, by which the defendant was to retain one fourth of the money in his hands for the use of the plaintiff. True, this is an action for *money*. A compromise was made with the tenants under a power from *H. R. Teller*, who was the only person who could give such a power; but it was, ne-

vertheless, as to one fourth, money received to the use of the plaintiff.

Suppose, all the children of *Isaac Teller*, the ancestor, should agree together, notwithstanding a devise of the whole estate to one of them, to divide it equally between them, and that a suit should be brought to recover any part of it, in the possession of another, the expenses of which suit should be borne by them all rateably, would such an agreement be unlawful and void under the statute? Whatever may have been the ancient law on the subject; yet, " that such a doctrine," says Mr. Justice *Buller*, (4 *Term Rep.* 340.) speaking of some of the early decisions, as to maintenance, " repugnant to every honest feeling of the human heart, should be soon laid aside, was to be expected. Accordingly, a variety of exceptions were soon made." And we may add, that if such an agreement between a brother and sister, or blood relations, as to the estate of their common ancestor, should be declared to be an offence, under this statute, it would be a disgrace to our law. Consanguinity or blood is a good consideration. If a feoffment would not be void, as between the parties, can a mere agreement for a conveyance be void ?

SPENCER, Ch. J. It has been insisted, on the argument, that the agreement is not unlawful : 1. Because, it does not appear, that the lands, for which suits were to be instituted, were held adversely. 2. Because, although *H. R. Teller* was the heir at law of his father, and the legal owner, the agreement carried into effect an equitable right, on the part of his sister, to have a proportion of the property, and that it was competent for the heir at law to waive his legal right, so far as to admit her to participate in the division of the estate. 3. Because, the defendant, having drawn the agreement, and acted under it, is concluded from making the objection, that it was illegal.

Other objections have been made to the plaintiff's right to maintain this action, besides the one on which the nonsuit was granted : 1. That the action, being founded on a joint retainer, by *Teller* and the plaintiff, the suit ought to have been brought by them jointly. 2.

That the plaintiff, under the agreement, was entitled to a conveyance of a portion of the land recovered, and is not entitled to any portion of the money received on the sale of the lands; and, 3. That the plaintiff ought to have proved notice to the defendant, to retain the proportion of the money he claims.    As these objections were not made at the trial, and, as it is possible, had they been made then, that they might have been answered and refuted, by evidence in the power of the plaintiff, I shall dismiss them from any further consideration, on the present motion.

Champerty and maintenance are distinct offences. Champerty is one species of maintenance; but, the statute, and elementary writers, regard it as a different offence, although subject to some of the same rules.  The first section of the statute, (1 *N. R. L.* 172. sess. 24. ch. 87.) enacts, " that no officer, or other person, shall take upon him any business, that is or may be in suit in any Court, for to have part of the thing in plea or demand; and no person, upon any such agreement, shall give up his right to another; and every such conveyance or agreement shall be void; and every person, who shall maintain any plea or suit, in any Court, for lands, tenements, or other things, for to have part or profit thereof, shall be punished by fine and imprisonment; but this act shall not prohibit any person to have counsel of persons duly licensed for that purpose, or to take counsel of his parents and next friends." The *eighth* section of the statute, prohibits the buying or selling any pretended right or title to lands, unless the person selling, or his ancestors, or those by whom he claims the same, have been in possession of the same, or of the reversion or remainder, or taken the rents and profits for one year next before the sale, upon the pain of forfeiting the value of the lands, and subjecting the buyer, knowing the same, to the same forfeiture.    The *ninth* section, prohibits any person from unlawfully maintaining another, in any matter or cause, in suit or variance, concerning lands, or goods, or debts, &c., upon the pain of forfeiting 250 dollars.  These are all the provisions of the statute, having any relation to the question to be decided; and, it is only necessary to state the different provisions, to perceive the difference in the of-

fences, and the different punishments denounced against them. The question, then, arises, whether the agreement between the plaintiff and *H. R. Teller*, is within the prohibitions of the statute; and whether it falls within the exceptions. The statutes of *West.* 1. ch. 25. and *West.* 2. ch. 49. related merely to officers; but the 28 *Edw.* I. extended to other persons, as well as officers; and our statute is nearly a transcript of the latter, with this addition, that it declares every such agreement and conveyance to be void. In *Jackson* v. *Ketchum*, (8 *Johns. Rep.* 479.) the question was, whether a purchase of land, during the pendency of a suit for the recovery of the same land, was an infraction of the statute, and the conveyance void. The Court decided, that such a purchase was against the statute; and that even a *bona fide* purchase, pending the suit, was within the statute, and would be *champerty*. It was urged, on the part of the plaintiff, that the agreement here is not unlawful, because it does not appear, that the lands are held adversely to the title of *H. R. Teller*. The statute does not make an adverse holding the test of illegality. It forbids any one taking upon himself any business, that is or may be in suit, in any Court, for to have part of the thing in plea or demand; and it prohibits any one from giving up his right to another, with respect to the thing in plea or demand. But it clearly appears, by the recitals to the agreement, and the whole scope of the contract, that *H. R. Teller* did not possess, and never had possessed the land referred to in the agreement; but that it was to be recovered, if recovered at all, after severe litigation, and with heavy expense. The agreement recites, that *Isaac Teller* was possessed of the lands, in his lifetime; that *H. R. Teller* was his heir at law, and laid claim to them, and that suits were to be instituted for the recovery of a part or the whole of them. From all this, the inference is irresistible, that *H. R. Teller* never was in possession of any of these lands, and that his right consisted of a claim to them, founded on his father's possession; and that they were possessed in such a manner, that he was driven to his remedy by suits at law; thus refuting and repelling any idea, that they were held in subserviency to his title or claim. The plaintiff, by becoming a party to the

ALBANY,
January, 1823.

THALIMER
v.
BRINKER-
HOFF.

agreement, is concluded as to the facts recited and admit-ted ; and the facts, taken collectively, leave no doubt, that *H. R. Teller's* claim, was founded in a right of action merely. This, then, is a case within the very terms, spirit, and intent, of the first section of the statute. The plaintiff, by stipulating to contribute one half of all the expenses that might accrue, in the prosecution of the suits to be instituted by *Teller*, for the recovery of the property, if the suits should prove unfortunate, did take upon himself business, that was to be put in suit, for to have part of the thing in plea or demand ; and the statute declares every such agreement to be void. If the agreement between the parties did not speak the truth, with respect to *Teller's* claim to the land, and if it could have been shown, that the possessions of the tenants or holders of the lands, were not adverse to *Teller's* claim, when the motion for a nonsuit was made, the plaintiff was bound to show the fact, that the possessions were not hostile to that claim. This was not offered to be done. The plaintiff rested his right of recovery on the validity of the agreement ; and I, then, thought, and continue to think, that the agreement, unexplained, was susceptible of but one construction ; and that it was a case manifestly within the statute.

To take the case out of the operation of the statute, it was contended, on the argument, that the plaintiff's wife, as the sister of *H. R. Teller*, and as one of the children of *Isaac Teller*, had such an equitable interest in the land, as to render it lawful for her husband to make the agreement. It was decided in this Court, in *Wickham* v. *Conklin*, (8 *Johns. Rep.* 227.) that where a party had any interest, legal or equitable, in the land which was the subject of the suit, there was no foundation for the charge of maintenance. In that case, which was a suit for the penalty inflicted by the 9th section of the statute for unlawful maintenance of a suit, *Conklin* had a resulting trust in the land in controversy, and had, therefore, a right to assist in the prosecution of the suit. Here, the only right which the plaintiff had, grew out of the very agreement prohibited by the statute. His wife had neither a legal nor equitable interest in the land, of which a Court of law or equity could take notice, or en-

force. The descent of property, on the death of its owner, is matter of positive regulation, by the municipal laws of the country where it is situated; and when such laws have ordained, that where a person dies seised of land, it shall descend to his eldest son, in exclusion of his sister, no Court can notice the claim of the sister, to have part of the inheritance, as an equitable claim, against the express and positive provision of the law, which totally excludes her. When, therefore, it is said, in such a case, that the sister has an equitable claim, it is only the undefined and vague opinion of individuals, that the law is wrong, and that the sister ought to be admitted to an equal participation with the brother, of the property of the ancestor. The recital to the agreement admits that *H. R. Teller* was the heir at law of his father *Isaac Teller*, and as such laid claim to the property which was the subject of the agreement; and it admits, that the plaintiff, though he had married the sister of the heir at law, was not legally entitled to any part of the property, though it states, that in consequence of that marriage, he was justly entitled to a portion of it; but I am clearly of opinion, that the notion of the parties in this respect, does not authorize them to contravene the statute, by stipulating to carry on the suits to be instituted, at their joint expense, and for the ultimate division of the property among them, if the suits terminated successfully. But it has been insisted, that this case comes within the exception of the statute, and the adjudged cases thereon; the words of the exception are : " *but this act shall not prohibit any person to have counsel of persons duly licensed for that purpose, or to take counsel of his parents and next friends.*"

It is laid down by *Hawkins*, (ch. 84. s. 18.) " that no conveyance, or promise thereof, relating to lands in suit, made by a father to his son, or by any ancestor to his heir apparent, is within this statute, since it only gives them the greater encouragement to do what, by nature, they are bound to do." *Coke*, (2 *Inst.* 563, 564.) in commenting on the statute of 28 *Edw.* I., and upon the exception, and of allowing counsel to be taken of parents and next friends, says, there is a diversity of signification between taking counsel of serjeants at law, and attorneys, and of the *prochein*

*amyes;* that if a serjeant, apprentice, or attorney, take a feoffment, hanging the plea, or the like, to maintain the tenant, though it be in lieu of his fee, yet this is champerty, within the purview of the statute; that to take an estate in the land, hanging the writ, for maintenance, is to become a party; but if a father be impleaded, he may infeoff his son, for his assistance, maintenance, and comfort; for this is nature's profession, for the son *assistere, manutenere, et consolari, et e converso, et sic de similibus; et sic alia est professio legis, et, alia naturæ;* so it is, that the son may, of his own money, and in his own name, give fees to his father's counsel or attorney, without any expectation of repayment, and so may the father to his son's counsel.———In like manner, and by the like reason, if the father be demandant in a *precipe,* he may promise and contract with the son, to assure him the land after the recovery, and it is not champerty within the act; and so of any other ancestor, and his heir apparent. There are *prochein amyes* not only in blood, but in estate also: and, therefore, as the next of blood is a *prochein amy,* in respect to the expectancy of descent, (and yet it may be, it shall never descend to him,) so they that have reversions, or remainders expectant, upon estates in tail, life or lives, are *prochein amyes,* in estate, and are excepted out of this law. With these positions, *Fitzherb. N. B.,* 563. fully agrees. It is, at least, doubtful, whether Lord *Coke* means to say, that the son and heir may take a conveyance, in consideration of aid and assistance in maintaining the suit; or whether he means only, that the father is not restrained from making provision for his son and heir, notwithstanding the pendency of the suit. I understand him to mean the latter. But it is immaterial whether he means the one or the other; the exception does not extend to such a case as this. If the plaintiff would take the benefit of this exception, in favour of an heir apparent, it was incumbent on him to show, that his wife was such heir apparent. This does not appear, and is not to be intended. But, again; what puts at rest this pretence is, that the agreement secures nothing to the sister of *Teller;* it stipulates, that on the recovery of the whole, or any part of the property, *Teller* should execute to the plaintiff, his heirs and assigns, conveyances for one fourth part

of the property recovered; thus entirely excluding his wife, and putting the property, when conveyed, under his own dominion and control. Indeed, it is impossible for me to consider this transaction between the plaintiff and *Teller*, in any other light, than a mere colourable pretext, to avoid the effect of the statute.

The defendant is not precluded from making the objection, that the agreement is void. He is chargeable with knowledge of the contents of the agreement; but he is not a party to it, nor a *particeps criminis*. He took no interest under the agreement, and assumed no responsibility in consequence of it.

It is insisted, that the defendant, having been retained by the plaintiff and *Teller*, is bound to pay the plaintiff his proportion of the money received. No money was received under the joint retainer, but it was received under the compromises made by the defendant with the possessors of the land, under authority derived from *Teller* alone, in virtue of the power he gave to the defendant. It may well be questioned whether the defendant has received any money to which the plaintiff had a legal title, even admitting the agreement to be valid; but it being void, surely the plaintiff has no foundation to stand on. It is a fundamental rule, that all contracts which have for their object any thing repugnant to the general policy of the law, or contrary to the provisions of a statute, are void; for it is a rule as well in law as equity, *ex turpi contractu actio non oritur*. Thus, in *Whitaker* v. *Cone*, (2 *Johns. Cases*, 58.) notes had been given, as the consideration for the conveyance of *Susquehannah* lands, under a claim derived from the state of *Connecticut*, but which lands lay within the state of *Pennsylvania;* the sale was held to be illegal, and the consideration void, on the ground, that it was buying and selling a pretended title, and was a species of maintenance. Again; in *Belding* v. *Pitkin*, (2 *Caines' Rep.* 147.) the plaintiff, as the agent of the defendant's testator, had sold lands situated as in the last case, and under the same circumstances, upon an agreement that he should have half the proceeds; and the defendant's testator had received moneys arising from such sale; it was adjudged, that the contract being illegal, no action was sus-

tainable. In *Hunt* v. *Knickerbacker,* (5 *Johns. Rep.* 327.)
the defendant had received tickets in a lottery instituted in
*Connecticut,* for the purpose of selling them in this state, in
contravention of our statute; it was held, that no action
could be sustained for the tickets, or the money received.
The late Chief Justice *Thompson* said, that he believed
no case could be found where an action has been sustained,
which goes in affirmance of an illegal contract, and where
its object is to enforce the performance of an engagement
prohibited by law ; and that wherever an action has been
sustained against a party, to prevent him from retaining the
benefit derived from an unlawful act, the action proceeded
in disaffirmance of the contract, and instead of endeavour-
ing to enforce it, presumes it to be void.   When it is con-
sidered that, in this case, the plaintiff's only title to demand
any thing, depends on the validity of the agreement entered
into between him and *Teller,* if that agreement be void, he
stands without any pretence of right.   I have thought it
unnecessary to cite more cases, in support of a doctrine
deemed so plain and salutary.

   We have no concern with the policy of the statute, to
prevent and punish champerty and maintenance.   It is
enough for us, that the law forbids these offences ; and it
may well be doubted, whether the cases to which I have re-
ferred, allowing a conveyance pending a suit, from a father
to his son and heir, is not an extension of the exception be-
yond its natural bearing and import.   To allow the exception
to be extended to collaterals, because, possibly, they may
inherit the estate ; and to permit it, even to be extended to
connexions of such collaterals, having no consanguinity or
relationship with the party claiming title, would, in my
judgment, amount to a virtual repeal of the act.   Mr. Jus-
tice *Blackstone,* (4 *Bl. Com.* 134, 135.) speaking of mainte-
nance, says, it is an offence against public justice, as it keeps
alive strife and contention, and perverts the remedial pro-
cess of the law into an engine of oppression.   Of *champer-
tors* he says, " these pests of civil society, that are perpe-
tually endeavouring to disturb the repose of their neigh-
bours, and officiously interfering in other men's quarrels,
even at the hazard of their own fortunes, were severely ani-

madverted upon by the common law, and were punished by the forfeiture of a third part of their goods, and perpetual infamy." The motion to set aside the nonsuit, and for a new trial, must be denied.

PLATT, J. concurred.

WOODWORTH, J. (dissenting) At the trial, the plaintiff was nonsuited, on the ground that the agreement was unlawful and void, and could not be the foundation of an action. On the argument of this case, other grounds were taken, to show that the plaintiff could not recover; but I waive the consideration of them at present, and proceed to examine the question, whether this agreement was unlawful, as being against the provisions of the statute to prevent and punish champerty and maintenance.

This question arises under the first section of the act, (1 *N. R. L.* 172.) which declares, " that no officer, or other person, shall take upon him any business that is or may be in suit in any Court, for to have part of the thing in plea or demand; and no person upon such agreement shall give up his right to another. And every such conveyance and agreement shall be void." The ninth section declares, " that no person shall unlawfully maintain, or cause or procure any unlawful maintenance, in any matter or cause whatsoever, in suit or variance, concerning any lands, tenements, heredita-ments, or any goods, chattels, debts, damages or offences, in any court in this state, or before any person who shall have authority to hear or determine concerning the same." These provisions contain the substance of several English statutes, which have received a judicial exposition in the Courts of that country, in various adjudged cases. The de-cisions under those statutes must be considered as forming a part of the common law, and, consequently, will serve as land-marks to guide us in the application of the statute to the case under consideration. It is true, our act has one provision, more explicit than is found in the English statutes; it is de-clared, " *that every such conveyance and agreement shall be void:*" but these expressions cannot vary the rule of con-struction, because the words declare no more, than the law

would have declared had this clause been omitted. An agreement expressly prohibited by statute, must necessarily be considered inoperative and void. It will not be seriously urged, that the party is subject to the penalty only, and that the Court are bound to consider the contract legal and valid.

The first section relates to champerty; the ninth, to maintenance. The latter is defined to be " an officious inter-meddling in a suit, that no way belongs to one, or *in which the party has no interest*, by maintaining or assisting either party with money, or otherwise, to prosecute or defend it ;" the former is " a species of maintenance, being a bargain with a plaintiff or defendant to divide the land, or other matter sued for, between them, if they prevail at law." (4 *Black*. 134. 2 *Chitty's Crim. Law*, 115.) Both were of-fences at the common law, and punishable by fine and im-prisonment. In giving a construction, we must consider the nature and extent of the evil intended to be remedied. In the definition of maintenance, it will be seen, that persons, who have *any interest*, are not included ; so, also, if the agreement is founded on the ties of blood, it has been uni-formly held, not to come within the purview of the statute. (8 *Johns. Rep.* 484. *Hawk.* 131. ch. 84.) Without resort-ing to cases, it would seem to be most unreasonable to pro-hibit kindred from assisting their near relations, or to sub-ject an individual to punishment, who aided in the recovery of property, in which he had an interest, however contingent.

The statutes concerning champerty and maintenance, were intended to operate against strangers. The evil in-tended to be prevented, is well described in 1 *Leon.* 167. : " When many thought they had title or right unto any land, they, for the furtherance of their pretended right, conveyed their interest, in some part thereof, to great persons, and with their countenance did oppress the possessors." It is with reference to such cases, that *Blackstone* speaks of the actors as " pests of civil society, that are perpetually en-deavouring to disturb the repose of their neighbours, and officiously interfering in other men's quarrels, even at the hazard of their own fortunes." These statutes must be construed so as to effect the intention of the legislature,

which may be collected from the cause or necessity of the law; when that is discovered, it ought to be followed, with reason and discretion, in the construction, although such construction may seem contrary to the letter. (6 *Bac.* tit. *Stat. I.* 384.)

The early cases seem to have followed a literal construction, which the good sense of later times has exploded. In *Master* v. *Miller*, (4 *Term Rep.* 340.) Justice *Buller* observes, " at one time, not only he who laid out money to assist another in his cause, but he that, by his friendship or interest, saved him an expense, which he would otherwise be put to, was held guilty of maintenance; nay, if he officiously gave evidence, it was maintenance; so that he must have had a subpœna, or suppress the truth. That such doctrine, repugnant to every honest feeling of the human heart, should be soon laid aside, must be expected. Accordingly, a variety of exceptions were soon made, and, amongst others, it was held, that if a person *has any interest in the thing in dispute, though on contingency only,* he may lawfully maintain an action on it." (2 *Roll. Ab.* 115. *Bro.* tit. *Maintenance,* 7. 14. 17.)

In 1 *Hawk.* B. 1. ch. 84. sec. 19., it is laid down, that a conveyance by a father to his son, or by an ancestor to his heir apparent, is not within the statute, since it only gives them the greater encouragement to do what by nature they are bound to do. (1 *Bac. Ab.* 576.) So, also, the husband may maintain where the land may descend to his wife. (15 *Vin. Ab.* 162. *H.* 3. 1 *Hawk.* B. 1. ch. 83. sec. 20.) A brother of the half blood shall not maintain, because there is not an immediate possibility to inherit between them; but a brother of the whole blood is not within the statute, for he may inherit. (15 *Vin. Ab.* 162. *H.* 9.) On the same ground, to wit, the possibility of inheriting, it is lawful for the husband of a cousin, who may be heir, to maintain in any action; but, if the feme dies without issue, it is otherwise. (*Bro. Maintenance,* pl. 18. 15 *Vin. Ab.* 168. *O.* 9.) On the ground of interest, it is not necessary that a party should have a certain legal or equitable interest; it is enough, if it be shown, that there is a bare contingency of such an interest, in the lands in question, which, possibly, may never come

in *esse* ; and, in such case, one may lawfully maintain another in an action concerning such lands.   This doctrine appears to be fully recognised in 2 *Roll.* 117. 1 *Hawk.* B. 1. ch. 83. sec. 13, 14.   If the principles laid down in the preceding cases are recognised as sound law, they clearly prove, that the agreement made between the plaintiff and *Teller,* is not within the statute ; for the plaintiff, having intermarried with the sister of *Teller,* had a contingent interest in the lands sought to be recovered.   The extent of such interest is no where made the criterion, by which the lawfulness of the agreement is to be decided.    In the present case, the contingency rested on this : had *Teller* died intestate, and without issue, then the plaintiff's wife, by the rules of descent, would inherit as heir to her brother ; and, whether the property acquired was real or personal, the plaintiff would thereby obtain a beneficial interest.  · This ground alone is enough to protect the plaintiff against the operation of the statute, independent of the affinity existing between the parties.

The offence of champerty consists in the unlawful maintenance of a suit, in consideration of a bargain to have part of the thing in dispute.  This, according to the doctrine before advanced, must evidently mean the purchase of a part to which a party had not even a contingent right; but here no such purchase was made ; the plaintiff had a contingent, or possible interest, in the whole of the lands, depending on the happening of subsequent events, which might, or might not, vest the right.   The plaintiff has, then, done no more than to reduce this contingent interest to certainty, by accepting a covenant to convey one fourth, in case of a recovery, which may not have been more than the value of his contingent interest.   Be that as it may, he was a purchaser having an interest, and that distinguishes it from a purchase which the statute renders unlawful.

The preceding view of this case seems to dispense with the inquiry, whether there is proof that the lands were held adversely.   I will content myself by observing, that if an adverse possession can be presumed, the facts may warrant that presumption ; but this is not sufficient.   The party who insists that a deed is void, must make out the fact of ad-

verse possession affirmatively and clearly. An entry adverse to the lawful owner, is not to be presumed, but must appear by proof, and be made out by positive facts, and not by inference or conjecture. (9 *Johns. Rep.* 168. 8 *Johns. Rep.* 227. 3 *Johns. Cases,* 125.) But, it is contended, that the agreement contemplated only a conveyance of the property, and, consequently, the action cannot be supported. I do not construe the agreement in this manner; it is true, *Teller* is to convey one fourth of the property recovered; and had an actual recovery and possession of the land been obtained, that was undoubtedly the primary sense of the parties; but it is not to be restricted to this only. The property generally was in view; and whether the fruits of a recovery were the land itself, or the proceeds of the land, they were equally in contemplation. When recovered, the plaintiff became entitled to one fourth. I think this intent may be fairly inferred, when the relative situation of the parties is considered. *Teller* was the heir at law; the suits necessarily must be conducted in his name; a long and expensive litigation may have been foreseen and expected; *Teller* had the power of terminating the causes whenever he thought proper, by compromising with the possessors, and accepting an equivalent for a release of his title. When the defendant speaks of the property recovered, I consider it applicable to property generally, whether real or personal; the obvious intent being, that the plaintiff should participate, to the amount of one fourth of the avails; accordingly, we find, after several years of litigation, *Teller* exercised the power with which he was vested, and authorized an extinguishment of his claim. This was carried into effect by the defendant, who had been the attorney of *Teller* and the plaintiff, in the prosecution of the suits. By virtue of a power from *Teller*, he compromised the suits, and received 54,000 dollars, which, for aught that appears, remains in his hands.

The plaintiff claims the one fourth of this money, under the agreement, as the property recovered. I am satisfied the claim is well founded. By a just construction of the instrument, one fourth part of this money was had and received by the defendant to the plaintiff's use; and it being no where alleged that any part has been paid over to *Tel-*

*ler*, without notice of the plaintiff's claim, the defendant is liable. If the view I have taken be correct, it follows, that the action is well brought in the name of the plaintiff solely, and the objection that *Teller* is not joined, falls to the ground. I am of opinion, that the nonsuit ought to be set aside, and a new trial granted.

Motion denied.