UTICA,
Aug. 1826.

Thallhimer
v.
Brinckerhoff.

---

THALLHIMER *against* BRINCKERHOFF, Gentleman,
one, &c.

*T.*, having
title to land
held in posses-
sion by others,
made an a-
greement, not

ASSUMPSIT for money had and received, tried at the
*New-York* circuit, *October 5th*, 1824, before EDWARDS, C.,
Judge.

void for champerty or maintenance, in consideration of *Th's* agreeing to furnish pecuniary
assistance about recovering the land, that he would convey one-fourth of the land which
should be recovered, to *Th.*　*T.* appointed *B.* his attorney to conduct suits for the recovery
of the land.　The suits were finally compromised by *T.* who conveyed to the possessors
by various deeds executed by *B.* as his attorney, which deeds acknowledged the receipt of
the consideration money.

*Held*, that an action for money had and received, would lie against *T.* if he had received
the money, in behalf of *Th.* for one-fourth of the money so received by *T.*　But *B.* hav-
ing received the money. *held*, that the action lay against him.

*Held*, also, that the deeds executed by *B.*, as attorney for *T.*, were *prima faeia* evidence
that *B.* had received the money.

What is sufficient evidence, that *B.* knew of *Th's* claim under the contract.

What is sufficient evidence, that *Th.* knew of *B's* paying over the whole proceeds of the
compromise to *T.* ; and that he (*Th.*) acknowledged *T.* as his agent to receive the pro-
ceeds ; and looked to him for his, *Th's*. share of them, and not to *B.*

Where an agent is authorized to receive money for his principal, or do any other thing,
his drafts, receipts, account stated, or admissions relative to the subject of his agency, and
especially when all these are offered in connexion, constitute a part of the *res gesta ;* and
are competent, though not conclusive evidence against the principal.

Due notice being given to produce a letter, written by one party to another ; and the
latter refusing to produce the letter ; the former offered to prove by his clerk that he co-
pied the letter into a letter book, and that it was his invariable custom to carry letters, thus

'At the trial an agreement was given in evidence between the plaintiff and one *Henry R. Teller*, dated *April* 10*th*, 1807. This agreement recited a claim to certain lands by *Teller*, to whom the plaintiff was related ; and provided, that on its recovery, the former would convey to the plaintiff one fourth of it. *Teller* made the defendant his attorney, for the purpose of recovering the land ; but instead of actually taking possession of it, the claim was compromised between *Teller* and the possessors, who paid a large sum of money, which came to the hands of the defendant; and for one fourth of which this suit was brought. (See the agreement more at large, 20 *John.* 386, where its legality came in question. It was adjudged legal 3 *Cowen*, 623, *S. C.* on error.)

On the compromise, various deeds were executed, by the defendant, as the attorney of *Teller*, of different parts of the land, expressing the consideration received in money ; and these were offered by the plaintiff, and admitted, (though objected to,) as evidence, *prima facie*, that the defendant had received the money.

The judge overruled a motion for a nonsuit, made on the ground that the action for money had and received would not lie at the suit of the plaintiff.

The defendant set up in his defence, that he knew nothing of the agreement between the plaintiff and *Teller*, until after he had paid to or for *Teller*, and the latter had discharged him from all the moneys he had received ; and that *Teller* was in truth the agent of the plaintiff, to receive the money, or otherwise discharge the claim for it. Among other evidence to show this, he offered to prove

copied, to the post-office; and seldom handed them back; *held*, that this was sufficient evidence of sending the letter, though the clerk could not recollect that he sent the particular letter; and that a copy was admissible in evidence.

Where letters are written in a course of business or negociation by an agent, they are evidence against his principal, so far as they relate to the subject of his agency; but no farther.

Where mortgages are assigned, or conveyances executed, acknowledging the receipt of the consideration by the assignor or grantor, this is, *prima facia*, evidence that the consideration was actually paid, as expressed; and this, too, although the assignor or grantor was at the time indebted to the assignee or grantee, to the amount of the consideration expressed. The assignments or conveyances shall not, for that reason, be taken to have been in satisfaction of the debt.

UTICA,
Aug. 1826.

Thallhimer
v.
Brinckerhoff.

a correspondence between himself and the son of the plaintiff, *Barent Thallhimer*, who, he insisted, was the agent of the plaintiff. This correspondence was offered particularly to show, that long after the defendant had received the money, this being known to the plaintiff, he had acknowledged himself indebted to the defendant on mortgage ; and had set up no claim for the moneys in question. Notice had been given to the plaintiff, to produce the letters written by the defendant ; but the judge rejected his letter book as evidence ; though the plaintiff declined to produce the letters called for by the notice. The offer of the letter book was accompanied with evidence which will be found detailed in the opinion of the court.

Various mortgages taken by the defendant on the sale of the real estate, payable to *Teller*, had been assigned by the latter to the defendant, for a consideration expressed in the assignment to have been received by *Teller*. The registry of these assignments was offered in evidence against the defendant, but rejected.

The judge admitted in evidence, though objected to by the defendant, certain conveyances of land from *Teller* to the defendant, in which a consideration was expressed to have been received by *Teller*.

The defendant offered in evidence certain receipts, drafts, and an account stated by *Teller*, shewing the receipt of, and final settlement for the money in question ; which were rejected by the judge.

The defendant excepted to the various decisions of the judge, which were against him.

The verdict was for the plaintiff, for upwards of $13,-500 ; and the cause now came here on motion by the defendant for a new trial, on the bill of exceptions ; and also on a case made.

The above is a very slight outline of the facts to which the points of law decided by the court relate.

To say more of the facts here, is deemed unnecessary ; as they will be found sufficiently stated in the opinion of the court.

*G. Brinckerhoff*, for the defendant, said an action for money had and received, would not lie. The plaintiff being liable to 1-2 or 1-4 of all the expenses incurred in the recovery of the land, the accounts of the parties cannot be adjusted in this suit. The plaintiff considered *Teller* alone as accountable to him; and the defendant was accountable to *Teller* only. The plaintiff never gave the defendant notice to retain the money; and made no demand till after the defendant had paid over the money to *Teller*. (3 *John. Ch. Rep.* 473, and the cases there cited.) The decision of the court of errors, in *Thallhimer* v. *Brinckerhoff*, 3 *Cowen*, 623,) so far as it relates to the form of the action, and the nonjoinder of *Teller*, is out of the case and not binding. (13 *John. Rep.* 577. 1 *Hopkins' Rep.* 77, 8, 290. 7 *John. Ch. Rep.* 305, 310. 16 *John.* 233.) The letter book and the parts of letters rejected by the judge, should have been received. (4 *Campb. Rep.* 193. 3 *id.* 379, 305. 2 *Phil. Ev.* 20, *note* (*a.*) He examined at large the various decisions of the judge, noticed hereafter in the opinion of the court, and insisted that they were erroneous.

*S. G. Huntington*, contra, examined the decision in *Thallhimer* v. *Brinckerhoff*, (3 *Cowen*, 623;) and insisted that this case settled the form of the action; and that it was correctly brought in the name of *Thallhimer* alone. The judge was therefore right in denying the motion for a nonsuit. He argued at length in support of the other decisions of the judge at *nisi prius*.

A full history of the arguments is not given; because they would not be intelligible without a very long detail of facts, not deemed material to the law of the case.

*Curia*, per SUTHERLAND, J. The first question which arises is, whether, under the circumstances of this case, an action for money had and received can be sustained by the plaintiff. His rights all grow out of the agreement between him and *Henry R. Teller*, of the 10*th* of *April*, 1807. That agreement was originally held by this court,

UTICA,
Aug. 1826.

Thallhimer.
v.
Brinckerhoff.

UTICA,
Aug. 1826.

Thallhimer
v.
Brinckerhoff.

to be void as against the act, (1 *R. L.* 172,) to prevent champerty and maintenance. (20 *John.* 386.) But the court of errors reversed that judgment, and established the validity of the contract. (3 *Cowen*, 623.) Whether that agreement was void or not, was the only point which strictly and properly arose upon the bill of exceptions. But the counsel discussed, and the court of errors expressed an opinion upon the question, whether, admitting the agreement to be valid, an action for money had and received could be sustained by the plaintiff. And although that opinion cannot be considered as settling the point on the ground of authority, it is entitled to great weight in the consideration of the question.

It was obviously the intention of *Teller* to give to *Thallhimer* a right to one fourth part of whatever might be recovered in the suits, which the agreement recites he was about to commence. The inducement to the agreement was not only a natural and meritorious one, but the consideration on which it was founded was valuable, and such as, under all the circumstances of the case, made the arrangement an act of prudence and discretion on the part of *Teller*. It was foreseen that the controversy would be protracted and expensive. Its result could not be anticipated with certainty ; and *Teller* knew, if he should fail to recover, that the costs and expense of the controversy would be enormous. He acted wisely, therefore, in guarding against a result that would have been so ruinous, by the agreement which he made with the plaintiff. If the suits had proceeded to judgment, and the land had been recovered, *Teller* was expressly bound by his covenant to convey one fourth part of the property to the plaintiff. The agreement made no express provision for the case of a compromise. But the legal title being admitted to be in *Teller*, he had a clear right to discontinue, or settle the suit, on such terms as he pleased ; and if he acted with good faith, and under the advice of counsel, all that the plaintiff could require, would be to participate in the fruits of the compromise, in the same proportion to which he would have been entitled if the land itself had been recov-

ered. If the money had been paid to *Teller* upon the compromise, whether he had a right to compromise or not, there can be no doubt, that *Thallhimer* might have affirmed the settlement, and recovered from him one fourth of the amount. It would work the grossest injustice, to give to the agreement a construction which would enable *Teller* to defeat its beneficial operation, so far as the plaintiff is concerned, by a settlement; and then to answer the plaintiff's claim by saying that his contract bound him only to convey one fourth of the land recovered, and not to pay one fourth of the money received in lieu of the land. The sense of the contract evidently is, as remarked by the chancellor, (3 *Cowen*, 649,) that in the event of success, *Thallhimer* shall have one fourth part of the property, whether the fruits of the claim should be realized in land or money.

If an action for money had and received could have been sustained by the plaintiff against *Teller*, on the money being paid to him, I perceive no reason why it cannot, against the present defendant, admitting the money still to be in his hands, or to have been paid over to *Teller* without the authority of the plaintiff, either express or implied. It is no objection to the action, that *Thallhimer* was to bear a proportion of the expenses of the controversy. It may be questioned whether, according to the true construction of the contract, he was to pay any thing before the termination of the suit; for the agreement provides, that *if the suits should be unsuccessful*, he should pay half the expenses; *but if Teller should recover*, then only one fourth of them. Pending the controversy, therefore, what proportion was he to advance? The testimony of Mr. *Emmet* renders it probable, that when this agreement was made, it was understood between the parties and their counsel, that a very small proportion, if any, of the costs, were to be paid, until the final termination of the suits. He expressly says, that such was the agreement in relation to the counsel fees; and that they were not paid until after the compromise. The attorney's fees, it is evident, were

not advanced by *Teller ;* for *Brinckerhoff* now claims the $15,000 at which they were liquidated, and paid by the defendants in the suits. But if they had been previously paid by *Teller,* that amount would belong to him, and not to *Brinckerhoff.* It is clear, therefore, that little or nothing was paid by *Teller* or *Thallhimer* while the suits were pending; and that there can be no account between them in relation to the costs, to be liquidated and adjusted. The costs are to be deducted from the $75,000 agreed to be paid by way of compromise; and the plaintiff is entitled to one fourth of the balance, either from *Teller* or the defendant.

I think the evidence warrants the conclusion, that the agreement between *Teller* and *Thallhimer* was known to the defendant. It was in the hand writing of his clerk, and witnessed by him and the defendant. The parties, therefore, were probably together in his office; and it is irrational to suppose that an arrangement in which the defendant might eventually have so deep an interest, and which there was no possible reason for concealing, was not communicated to him. He was probably, at that time, if he had not previously been, retained as attorney in the suits, which the agreement recites it was the intention of the parties to commence. A contract of so much importance, must have been a matter of conversation and discussion between the parties, at least, before it was finally concluded; and under all the circumstances of the case, the fair, and I think, the irresisible presumption is, that the defendant was fully apprised of all its provisions.

The next inquiry is, whether *Teller* was authorized by the plaintiff to settle with the defendant for his share of the recovery, (assuming for the present that such settlement has in fact been made.) It is not necessary that there should have been an express authority for the purpose. If the plaintiff has subsequently recognized or ratified the acts of *Teller* in that respect, it is equivalent to an original express power to perform those acts.

The power of attorney from *Teller* to the defendant, under which the suits were compromised, bears date the

22d of *December*, 1813 ; and the compromise itself took place in the following month. The deeds which are proved to have been given, bear date from *December*, 1813, to the following *April*. Independent of all evidence, it is incredible, that *Thallhimer* should not have known of the settlement in which he had so deep an interest. It was a matter of general notoriety. The suits affected a large number of individuals, and we have had very few controversies in our courts, the progress and termination of which were more generally known. It is not to be believed that the plaintiff, who resided within twelve miles of the city of *Albany*, where he had a son engaged in active business, and much nearer to *Schenectady*, where *Teller*, his brother-in-law appears to have lived, was not informed both of the fact and the terms of the settlement, about the time when it was effected. And yet no application is made by him to the defendant for his share of the proceeds of the settlement ; nor any intimation given him of his intention to call him to an account, until 1821, when this suit was commenced. How is this to be accounted for, except upon the supposition, that the plaintiff considered and acknowledged *Teller* as his agent, and was content to leave the final settlement, as he appears to have done the previous measures, to his judgment and discretion, and to look to him, and not to the defendant, for his share of the proceeds?

This view of the case derives strong confirmation from the circumstances attending the foreclosure of *Brinckerhoff's* mortgage against the plaintiff. The mortgage was foreclosed in 1816, for the non-payment of the interest. Many letters passed between the parties, from 1816 to 1818, pressing for payment on the one side, and begging indulgence on the other. But not an intimation is to be found of any claim on the part of the plaintiff against the defendant, in relation to the *Teller* property. Among the various suggestions made by the plaintiff, to avoid the ruinous consequences which he apprehended from a foreclosure of the mortgage, no allusion whatever is made to the fund in question, as laying the foundation either of a

legal or equitable claim against the defendant.   The correspondence, from the first to the last, admits the justice of the demands, and entreats only for forbearance.

Assuming, (what I have  endeavored to show must have been the fact,) that the plaintiff knew of the compromise at the time it was made ; is it credible that he remained uninformed and ignorant of the subsequent transactions between *Teller* and *Brinckerhoff*?   He must have known, (if such was the fact,) that *Teller* was assuming to act for him, as well as for himself, in the settlement with *Brinckerhoff* ;  and, considering the origin of the plaintiff's interest in the fund, that it grew out of the voluntary act of *Teller*, who alone appears to have taken any part in the management or direction of the controversy, nothing was more natural than that *Brinckerhoff* should have supposed that *Teller* possessed the authority which he assumed, to settle the whole claim.   And the plaintiff must, under all the circumstances of the case, be considered as having subsequently affirmed, if he did not originally authorize, his acts.

It was suggested, on the argument, that the reason of the plaintiff's omission to assert his claim against *Brinckerhoff*, was, his being advised by sounsel, that the agreement between him and *Teller*, out of which his rights grew, was illegal and void.   Admitting the fact, of which there is no evidence, it does not vary the case.   It is immaterial to the defendant, what were the plaintiff's reasons for permitting *Teller* to assume the character and power of an agent.   He did permit it; and upon him, and not upon the defendant, must the disatrous consequences, if any have ensued, be visited.

If *Brinckerhoff*, therefore, has fully settled with *Teller*, and paid over to him the whole amount received upon the compromise of the suits, it ought, upon every principle of law and justice, to be a bar to the plaintiff's claim.

Whether the evidence in the case shows such settlement and payment, is a question which I do not intend to examine ;  as I have come to the conclusion, that some material evidence, offered by the defendant upon this, as well

as other points, was improperly rejected; and that a new trial must be granted. I deem it, therefore, not only unnecessary, but improper, to discuss a pure question of fact which must again, upon additional evidence, be submitted to the consideration of a jury.

The learned judge who tried the cause, decided that the defendant might show, that he had accounted with, and paid over all the money to *Teller;* on the ground that the plaintiff had acquiesced in such payment; and thereby admitted the authority of *Teller* to act in his behalf. Under this decision, the defendant offered to prove by the receipts and drafts of *Teller,* that he had fully settled his accounts with him, and paid over to him all the money which he had received for and on account of the settlement. He also, for the same purpose, offered in evidence a stated account between him and *Teller;* and that *Teller,* on the 26*th* of *March,* 1818, twenty months before the commencement of this action, had finally settled with the defendant, in relation to the fund in question; and admitted a balance of upwards of $3000 to be due to him. The whole of this evidence was objected to by the plaintiff's counsel, and rejected by the judge. The ground of the objection, or of the decision, is not stated in the case.

I see no legal objection, in point of *competency,* to any part of this evidence.

If *Teller* was the authorized agent of the plaintiff, for the purpose of receiving his share of the money, (and it is only upon this supposition that proof of payment to the former is admissible at all,) then his receipts or drafts for the money, or his admissions that it has been paid, are competent evidence of that fact. The agent in such a case need not be called personally, to prove the payment; but it may be established by other evidence. I am not aware that this position has ever been questioned, where the receipt is given or admission made, at the time of the payment of the money, or delivery of the goods, or other thing which the evidence is designed to establish. So where an agency is established, what the agent says or does in making a contract, becomes part of the contract or

UTICA,
Aug. 1826.

Thallhimer
v.
Brinckerhoff.

*res gesta*, and is admissible in evidence against the principal. (3 *T. R.* 454. 7 *id.* 665. 1 *Esp. Rep.* 375. 4 *Taunt.* 511, 565, 663. 10 *Ves.* 128. 10 *John.* 44. 5 *Esp. Rep.* 74, 135. 2 *id.* 511, *note.* 2 *Campb. Rep.* 555. 1 *Phil. Ev.* 77. 2 *Wheat.* 380.)

In this case we are to presume that it would have appeared from the receipts and drafts themselves, or been otherwise shown, that they related to the fund in question. The account, I understand to have been offered in connexion with the drafts and receipts, and not as an independent piece of evidence ; and that the admission of a balance due to the defendant was made at the time of the settlement of the account. They all related to, and were parts of the *res gesta* to which the agency of *Teller* extended.

This evidence, therefore, I think, ought to have been submitted to the jury. It was competent but not conclusive, against the plaintiff. He might have impeached it by showing either fraud or mistake on the part of *Teller*, in making the settlement. What weight the evidence was entitled to with the jury, is an entirely distinct question.

I do not understand the defendant to have *offered his own answer* to a bill in chancery, in evidence. The case states, that he offered to read in evidence, the accounts ; *copies of which* are annexed to an answer of the defendant to a bill filed against him, &c. Neither the answer, nor the copies of the accounts, were offered in evidence. Why any allusion was made in the case to the answer, or the copies, does not satisfactorily appear. Perhaps the phraseology of the case is inaccurate, and the answer was in fact offered in evidence. If so, it was properly rejected.

The copies of the letters from the defendant to the plaintiff, contained in what is called the defendant's second letter book, should have been permitted to be read. The objection made to them, was, that it was not sufficiently proved that the original letters were sent according to their direction. *Westuvelt*, the defendant's clerk, testified that the letters in the second book were in his hand writing. That it was his invariable practice, to carry the original

letters to the post-office, as soon as he had copied them in
that letter book. That he very seldom handed them back.
The accuracy of the copy was not questioned.   The only
objection was, that the evidence did not make out the
fact, that the original was sent.   It comes fully up to
what Lord *Ellenborovgh*, in *Hetherington* v. *Kemp*, (4
*Campb.* 193,) held would be sufficient.   There the fact to
be established was notice of the dishonor of a bill ; and
the plaintiff proved that he wrote a letter to the defendant
containing such notice ; that the letter was put on a table,
where, according to the usage of his counting house, let-
ters for the post were always deposited ; and that a por-
ter carried them thence to the post office.   But the porter
was not called, and there was no evidence as to what had
become of the letter, after it was put down on the table.
Lord *Ellenborough* held this insufficient.   But he re-
marked, " Had you called the porter, and he had said that,
although he had no recollection of the letter in qestion,
he invariably carried to the post-office all the letters found
upon the table, this might have done."   Now the clerk,
in this case, does swear that it was his invariable custom
to carry to the post-office the original of all the letters
copied by him.   In *Miller* v. *Hackley*, (5 *John.* 375,) the
notary testified that it was usual for him, where the draw-
er or endorsers lived at a distance, to send a written no-
tice of the dishonor of the bill to them by post, on the eve-
ning of the same day ; and that he believed he had sent
such notice in that way in the present case.   This was
held sufficient in the first instance.   In such cases, too,
strict proof is always required.   (3 *Campb.* 305, 379.  2
*Ph. Ev.* 20, *note.*)

It was satisfactorily proved that *Barent Thallhimer* act-
ed as the agent, and with the knowledge and approbation
of his father, in his negotiations and correspondence with
the defendant, upon the subject of his mortgage.   So far,
therefore, as his letters strictly relate to that topic, they
are competent evidence against the plaintiff : no farther.
The letters of the *5th* of *January* and the *6th* of *February*,

UTICA,
Aug. 1826.

Thallhimer
v.
Brinckerhoff.

1816, are not of this description, and were properly excluded by the judge. The plaintiff's claims against *Teller* had no connexion with *Brinckerhoff's* mortgage ; and an authority to his son to correspond with the plaintiff in relation to the mortgage, conferred no power upon him to bind or commit him by any representations or declarations that he might make in relation to other topics. There is no proof that he was the authorized agent of his father in the settlement of his demands against *Teller*. When he says, therefore, in his letter of *January 5th*, that in his opinion $2000 will balance accounts between *Teller* and his father, he speaks without authority, and of course without effect. The same observations apply to the letter of the *6th* of *February*. The opinion of the master of the rolls in *Fairlie* v. *Hastings*, (10 *Ves.* 125,) is very clear and explicit on this point. And all the cases already cited upon the authority of agents to bind their principals, by their acts or declarations, are applicable here.

The acknowledgment contained in the deeds executed by *Brinckerhoff*, as attorney for *Teller*, that the consideration money expressed therein had been paid, was correctly held by the judge, to be *prima facie* evidence, that the money was actually paid to him. If such was not the fact, he had it in his power to show to whom it was paid, by calling the different grantees as witnesses. *Brinckerhoff* was properly allowed credit for all the mortgages given directly to *Teller*.

If the acknowledgment of the receipt of the consideration money in the deeds executed by *Brinckerhoff*, as attorney, is evidence of the payment of the money to him, then, upon the same principle, the consideration money of the mortgages assigned by *Teller* to *Brinckerhoff*, and for the different lots conveyed to him, must be presumed to have been paid by *Brinckerhoff* to *Teller*, as all those instruments contain a similar acknowledgment. There is nothing to show that those assignments and conveyances were made in part payment of *Brinckerhoff's* debt; and were not, as they purport, distinct and independent purchases. He cannot, therefore, be charged

with those sums. A case, however, involving so large an amount of property, ought not to be decided upon such slight presumptions, where evidence of a much more satisfactory character must be in the power of the parties.

I am not aware of any other point upon which it is important for the court to express an opinion.

New trial granted.