Barton *v.* Port Jackson and Union Falls Plank Road Co.

Judgment for the defendant.

[ALBANY GENERAL TERM, December 5, 1853. *Parker, Wright* and *Harris,* Justices.]

————◆————

BARTON & WOODWORTH *vs.* THE PORT JACKSON and UNION FALLS PLANK ROAD COMPANY.

17b 397
20ap205

17b 397
65 AD¹590

A contract which is expressly within the prohibition of a statute is void, although the statute is only prohibitory in its terms, and does not declare in so many words that all contracts therein forbidden shall be void.

Accordingly *held,* that under the provisions of the statute prohibiting directors of plank road companies from being concerned in any contract for the making or working of the road, or any part thereof, a contract between a plank road company and two of its directors, for the construction by the latter of a portion of the road, was absolutely void.

Neither the directors nor stockholders of a plank road company can *waive* the provisions of the statute forbidding the directors from participating in the benefits of a contract for building the road.

Where a contract grows out of, or is connected with, an illegal act, the court will not lend its aid to enforce it. And if it be in fact connected with the illegal transaction, it is tainted with the illegality of the transaction from whence it sprung.

Where there are two considerations to an agreement, if either of them be unlawful the agreement is void.

An agreement by a plank road company, to purchase its own stock, is against public policy. And the directors have no power to make such purchase and mortgage the road, and make the stockholders personally liable.

Every new agreement entered into for the purpose of carrying into effect any of the unexecuted provisions of a previous illegal contract, is void.

THIS case came up on a verdict taken at the Clinton circuit, in July, 1853, subject to the opinion of the court. The action was brought on a written contract, made by the defendants with Kingsland & Co. and Lyman Woodworth, for the construction

of a part of their plank road, and the purchase by the company of a portion of their capital stock.

The complaint, after averring the incorporation of the defendants, set out the agreement in full. It was dated September 2, 1850, and was between Kingsland & Co. of Keeseville, and Lyman Woodworth (the plaintiff) of Peru, of the one part, and the defendant of the other part. Kingsland & Co. and Woodworth agreed to construct and fully complete a certain portion of the defendants' plank road, in the manner particularly specified. The portion of the road thus agreed to be constructed was to be finished by the first of January, 1851, provided the plank could be procured at $7.50. Whenever one mile of the road should be completed, the company agreed that within three days after notice in writing thereof, they would either accept or reject the said mile of road, or the same should be deemed accepted by said company; and the same provision was to govern as to each and every subsequent mile of the road. The plank road company agreed to pay Kingsland & Co. and Woodworth the sum of $1337 for materials furnished, and services rendered, in building each and every mile of the road, including culverts. When that section of the road so agreed to be constructed was completed, the defendants agreed to take and receive from K. & Co. and W. $2200 of the capital stock of the company and add it to the amount which the company should then owe them for furnishing materials and building the road, "and then give to said Kingsland & Co. and Woodworth a mortgage on the road from Port Jackson to Peaseleyville, conditioned for the payment of the amount due thereon and mentioned in the mortgage, in five equal annual payments with the interest semi-annually."

The agreement was signed by Kingsland & Co. and by Caleb D. Barton, Nathan Lapham, Albert Norris and George Davis, who were at that time directors and stockholders of the company. The complaint further alleged that the board of directors at the time of the contract consisted of, and did still consist of seven, and besides the four above named as executing the contract, Jacob D. Kingsland, one of the firm of Kingsland

& Co., and Lyman - Woodworth (the plaintiff) and Josiah T. Everest composed the board. That when the contract was made, the said board of directors owned the entire stock of the road; that they were all present when the agreement was made, and assented to it, and all executed it, except Everest, who did not dissent or object to it, but consented to it and the subsequent performance of it by the plaintiffs, and assented and agreed to a settlement made between the parties. That the contract was made in good faith, and believed by the parties to be valid and binding; neither party having any suspicion or belief that it was invalid, and that in fact all provisions of the statute in conflict with the contract were waived and disclaimed by all the stockholders. The complaint further averred that Kingsland & Co. and Woodworth proceeded to execute the contract with all reasonable diligence on their part, but that they could not obtain the necessary plank to complete the road, at the rate of $7.50 per 1000 feet, by the first of January, 1851, although they made reasonable efforts to do so. That they completed the road by the first of July, 1851, and in all respects complied with the requirements on their part, in building it, and to the satisfaction of the defendants, except as mentioned; and the defendants from time to time accepted the road, as in the contract provided. That the whole amount of the work, materials, &c. was $5730.74, after making all proper deductions. That the defendants agreed to enlarge the time for the completion of the road from 1st of January, 1851, to 1st of July, 1851; and that on the 9th of July, 1851, the defendants finally accepted the road, and the sum of $5730.74 was settled and agreed upon between the parties as the amount due and owing from the defendants to Kingsland & Co. and Woodworth, with interest from July 1st, 1851; which settlement the plaintiffs averred to be valid, and binding on the defendants. The complaint then averred that the plaintiffs had assigned to the defendants $2200 of capital stock, as promised in the contract, which had been accepted by the defendants and interest paid the plaintiffs thereon. That K. & Co. and W. had in all things performed all the conditions of the agreement, on their part, but that the defendants had

failed and refused to give to K. & Co. and W. the mortgage agreed upon in the contract, although they drew a mortgage and tendered it to the defendants for execution, who declined and refused to execute it. That the plaintiff Barton, before the commencement of this suit, became and still was the assignee and owner of the interest of Kingsland & Co. in the contract; and that the plaintiffs, together, were the entire owners of the said debt and claim. That the first payment, being one-fifth of said two sums, to wit, for the work and materials and for the stock, and which became due on the 1st day of July, 1852, amounted to the sum of $1586.15, and had not been made, and that the interest had not been paid, except the sum of $232.50 to Woodworth, and $193.34 to Barton, to be credited 1st July, 1852.

The complaint also contained what under the old practice would be called the common counts, alleging an indebtedness to Kingsland & Co. and Woodworth, on the part of the defendants, of $10,000, for work, labor and materials, and for $2,200 of stock sold; also a *quantum meruit ;* demanding judgment for $7,504.90.

The answer admitted the incorporation of the plank road company, and the execution of the agreement, with a slight variation; and averred that Jacob D. Kingsland was at the time of making the contract, and during the time of constructing the road, one of the firm of Kingsland & Co. and interested in the agreement and in the work done under it, and then was, and ever since had been and still was, one of the directors of said company; and that Lyman Woodworth was also a director during the same period, and also interested in the contract and work under it. The defendants insisted that the agreement was therefore null and void, and the answer denied that the defendants ever waived or disclaimed any of the provisions of the statute, in conflict with the contract; that the contract was in direct violation of the provisions, and they could not therefore waive its provisions. The answer denied that the defendants ever consented to the performance of the work; it also denied the settlement, and that the defendants refused to execute a

mortgage ; but averred that they were ready and willing to execute a mortgage on the road, on condition that the directors and stockholders should not be held personally liable for the debt. The answer denied all indebtedness, and concluded by averring that all work performed by Kingsland & Co. and Woodworth, on the road, was done while Woodworth and Kingsland were directors.

The reply denied that Kingsland had any interest in the work under the contract, beyond one-twelfth part ; or that he and Woodworth, or either of them, were directors of the road at the time of making the contract, or that they had since been directors ; but insisted that by entering into said contract they ceased to be directors of the company. It denied that the contract was in violation of the statute, but averred that it was binding, and that the defendants could waive, as they did, the provisions of the statute, &c.

On the trial the plaintiffs' counsel produced in evidence the book containing the proceedings and acts of the corporation, and proved by the secretary that on the 2d day of September, 1850, Caleb D. Barton, (the plaintiff,) Jacob D. Kingsland, Nathan Lapham, Albert Norris, George Davis, Josiah T. Everest and Lyman Woodworth (the plaintiff) were directors of the company. Jacob D. Kingsland was then a member of the firm of Kingsland & Co., and George Davis was then a member of the firm of Davis & Weaver. The plaintiffs' counsel also produced in evidence the original contract set out in the complaint. The stockholders on the 2d day of September, 1850, were Caleb D. Barton, Nathan Lapham, Lyman Woodworth, M. R. Bissell, A. Norris, Davis & Weaver, Josiah T. Everest, D. K. Day, Kingsland & Co., Goulding & Peabody. Davis & Weaver's stock was assigned to Lockwood of Troy, on the 27th of January, 1851. At a meeting of the directors, all being present, on the 2d of September, 1850, it was resolved to "let a job or make a contract, with Kingsland & Co. and L. Woodworth," to build that portion of the road in question. The contract was executed in pursuance of this resolution. It was proved that on the 9th of July, 1851, the same persons were directors as on the 2d of

September, 1850 ; that on the former day, at a meeting of the directors, when all were present except Norris and Davis, the subject of a settlement with K. & Co. and W. for building the road was discussed, and the sum of $7,930.74 was admitted to be due to K. & Co. and W. At the foot of the minutes of the proceedings was this entry, signed by Kingsland & Co. and Woodworth : "The above is a settlement between Kingsland & Co. and L. Woodworth for building road as per contract, to be paid by a mortgage as per contract." On the 30th of August, 1852, K. & Co. and W. made an assignment of $2,200 of the stock to the company, on its books. The directors refused to accept the assignment, unless Kingsland & Co. and Woodworth would take a mortgage on the road, without a bond. The directors were willing to give a mortgage. The plaintiffs proved an assignment to Barton of all the interest of Kingsland & Co. in the contract, and rested. The defendants called *Nathan Lapham* as a witness. He was objected to as incompetent, by reason of his interest; but he was admitted, and testified that at the settlement on the 9th of July, 1851, the company offered to give a mortgage, *without a bond,* according to the agreement. The witness had heard Barton, the plaintiff, say that the company were not to give a bond but a mortgage. The declarations of Barton were objected to, as varying the legal effect of the written contract, but admitted. The witness further testified, on cross-examination, that the company had never had a mortgage written out and tendered; that he knew of the law prohibiting contracts with a director, at the time the contract was made ; but the reason he was willing to make it was that it was agreed at the time that the directors or stockholders should not be personally liable, and only a mortgage on the road be given. One of the directors had previously refused to take a contract, on the ground that it was against the statute. *Josiah S. Everest* testified, under the same objections as the last witness, that he was a director, and was present at the meeting on the 9th of July, 1851. The amount was then figured up to ascertain how large to make the mortgage, which the directors then offered to give. Lockwood, Hart, Bissell, Day and Weaver

were not present at that meeting. The witness was not present at the signing of the contract with Kingsland & Co. and Woodworth. Woodworth then knew, and before the passage of the resolution, of the clause of the statute prohibiting a director from being interested in contracts. Kingsland, he thought, was ignorant of the law. The witness was present on the 2d of September, 1850, and voted for the resolution of that date, agreeing to let the job. The contract was afterwards brought to him to sign, and he refused to sign it. The jury found a verdict for the plaintiffs under the direction of the judge, subject to the opinion of the supreme court, for $1,542.89, being one-fifth of the sum for which the mortgage was to be given, with interest to July 16, 1851, the day of trial.

*G. A. Simmons & C. W. Tabor*, for the plaintiffs.

*G. M. Beckwith*, for the defendants.

*By the Court*, C. L. ALLEN, J. The first question which arises for the consideration of the court in this case is whether the contract on which the plaintiffs claim to recover is in violation of the statute, and void. By the 23d section of the act in relation to turnpike companies, (1 *R. S.* 582,) it is declared that no director of the corporation "to which he shall belong shall be concerned, directly or indirectly, in any contract for the making or working of the road, or any part thereof, during the time he shall be a director." By the 47th section of the act for the incorporation of companies to construct plank roads, (*Laws of* 1847, *pp.* 231, 352,) section 23 above recited, among others, is made to apply to the companies organized under that act. By these two sections, then, directors are expressly prohibited from being directly or indirectly concerned in any contract for the making of the road, or any part thereof. It is not disputed, but expressly proved, that Jacob D. Kingsland of the firm of Kingsland & Co., and Lyman Woodworth, were both directors of this company on the 2d of September, 1850, when the contract was made with them to construct that portion of the road for which the plain-

Barton *v.* Port Jackson and Union Falls Plank Road Company.

tiffs claim now to recover; and that they remained such directors down to the time of the alleged settlement in July, 1851. The contract, therefore, was expressly within the prohibition of the statute, and the question is whether it is not therefore void. The section is only prohibitory in its terms. It does not declare in so many words, that all such contracts shall be void. But this is not necessary. Every act done against a prohibitory statute is not only illegal but absolutely void, and the court cannot assist an illegal transaction, in any respect, or permit it to be set up as a protection. (*Hallett* v. *Novion*, 14 *John.* 273, 290.) In *Griffith* v. *Wells*, (3 *Denio*, 226,) the court held that though the excise law did not in terms prohibit the sale of strong or spirituous liquors without a license, nor declare the act illegal, but only inflicted a penalty upon the offender; yet that where a statute inflicts a penalty for doing an act, though the act be not prohibited, the thing is still unlawful; for it cannot be intended that a statute would inflict a penalty for a lawful act. All such contracts are void, though the statute does not declare them so. It is sufficient that the statute forbids. (*Story on Con.* §§ 613, 614, *&c.*)

It has been decided repeatedly that all contracts contrary to the provisions of a statute are void, and it is a general rule that courts will not aid either party in enforcing an illegal executory contract; nor, if executed, will they aid either party in setting it aside, or in recovering back what has passed under it. (*Nellis* v. *Clark*, 4 *Hill*, 424. *Hook* v. *Gray*, 6 *Barb.* 398; *S. C.*, 4 *Comst.* 449. 20 *John.* 397. 4 *Denio*, 63.) In *Pennington* v. *Townsend*, (7 *Wend.* 276,) it was decided that a foreign incorporated banking company which violated the restraining act, could not recover the amount of a check discounted by them; the court remarking that any contract founded upon an unlawful act, whether it be *malum prohibitum, or malum in se*, cannot be enforced by action. A party to an illegal transaction may object its illegality when it is sought to be enforced against him, though he cannot enforce it. (*Tylee* v. *Yates*, 3 *Barb. S. C. Rep.* 222.) The charter of the city of New-York provides, that no member of the common council shall be directly or indirectly interested in any

contract with the city. An alderman became interested in a contract for supplying coals to the city and took a note of the contractor for his share of the profits ; held void in the hands of the assignees for the benefit of the alderman's creditors. (*Bell* v. *Quin*, 2 *Sand.* 146.)

But it is argued that the disability clause in the statute was meant for the sole benefit of the stockholders, and that they have *waived it ;* that a majority could waive it, but all in fact have done so, most of them expressly, and the rest by silent assent and non-objection.

It is true that a party may waive a statutory proceeding for his own benefit, as for instance, notice made preliminary to an ejectment. (2 *Barb. S. C. Rep.* 316. 3 *Comst.* 197.) But I have yet to find a case where directors or even the stockholders of a corporation may waive the provisions of a *prohibitory statute,* enacted for good reasons, expressly forbidding the directors of a company from participating in the benefits of a contract for building their road. If directors may enter into contracts with themselves, fair competition may be prevented, and the stockholders may thus be compelled to pay much more for the construction of their road than they would if the contracts were thrown open and awarded to the lowest bidders.

The case of *Bell* v. *Quin,* (2 *Sand.* 247,) certainly does not sanction any such idea, but the whole amount of reasoning in the opinion of the court entirely repudiates it, and so do the cases cited by the court. The cases of *Armstrong* v. *Toler,* (11 *Wheat.* 258,) and *Jackson* v. *Walker,* (5 *Hill,* 27,) establish the position that where the legislature have said the thing *shall not be done,* that is enough. The court in the latter case declined to discuss the policy of the law ; deeming themselves entirely concluded by the letter and commands of the statute.

But how, or in what manner, it may be asked, have the directors or stockholders waived the provisions of the statute, and where is the evidence of it ? It is said most of them have done it expressly. If it is supposed the evidence is to be found in the proceedings of the 9th of July, 1851, it will be seen on looking at the resolution of that date that after liquidating the

amount, which the evidence shows was done for the purpose of ascertaining what sum was to be put into the mortgage, Kingsland & Co. and Woodworth executed a memorandum, by which they acknowledged that this was a settlement for " *building the road as per contract, to be paid by a mortgage as per contract.*" And the evidence shows further, that the directors were only willing to give such mortgage without any bond, and they refused afterwards to accept the assignment of the $2200 *stock,* unless Kingsland & Co. and Woodworth would take such *mortgage on the road without a bond.* There was in fact no settlement beyond a liquidation of the amount due ; for the company expressly refused to give a bond, or to accept the assignment of the stock, unless Kingsland & Co. and Woodworth would take the mortgage. The plaintiffs would not receive the mortgage. There was therefore only an attempt to close the matter, which was not successful.

The cases in 4*th Comstock* and 11*th Wheaton* establish the doctrine that where a contract grows out of, or is connected with, an illegal act, the court will not lend its aid to enforce it, and if it be in fact connected with the illegal transaction, it is tainted with the illegality of the transaction from whence it sprung. (*And see* 2 *Sandf.* 146, *and* 4 *Denio,* 63.)

Again, it cannot be said that the settlement with Lyman Woodworth on the 24th of February, 1852, was a waiver. Kingsland & Co. were not parties to this settlement. It was a transaction between the company and Lyman Woodworth individually. Besides, if it means any thing, it shows the intention of the company to fairly liquidate the amount for which they were to execute the mortgage according to the contract, and nothing further.

If I am correct in thus coming to a conclusion, that the contract was void and illegal, because prohibited by statute, then it follows that the agreement to take the $2,200 of stock was equally invalid, as being part of the contract to build. It has been repeatedly held, that where there are two considerations to an agreement, if either of them be unlawful the agreement is void. If one be valid and the other void only, the valid consid-

eration may sustain the promise. But a void consideration may not be an unlawful one. (*Mackie* v. *Cairns,* 5 *Cowen,* 547. 6 *Id.* 431.) In this case the statute expressly prohibits the contract; it is void; it is illegal.

But I am of opinion, that the agreement of the company to purchase the stock of Kingsland & Co. and Woodworth is against public policy, and that the directors had no power to make such purchase. The powers conferred by the revised statutes relative to plank roads, are the same as those in relation to turnpike companies. (1 *R. S.* 579, § 14.) By the general powers in 1 R. S. 599, sec. 1 of the 3d title, they have the power to hold, purchase and convey, such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in their charter. These powers do not authorize them to purchase their own stock, although they may perhaps be authorized to take it in payment of a debt due them. If they can do so, it would be a dangerous power, in relation to the plank road companies; for by the 44th section of the act, the stockholders of every company are made liable in their individual capacity, for the payment of the debts of the company, for an amount equal to the amount of the stock they severally have subscribed. And section 65 declares that the debts and liabilities of any company shall not exceed in amount, at any time, 50 per cent of the amount of its capital actually paid in; and if such debts and liabilities shall at any time exceed such amount, the stockholders who were such at the time any excess of debts or liabilities shall be created or increased, shall be jointly and severally individually liable for such excess, in addition to their other individual liability. Bissell, Day, Goulding and Peabody were stockholders in this case, but were not directors.

Section 38, 1 R. S. 589, (§ 117, *id. 4th ed. p.* 1407,) declares that the business and affairs of the company shall be managed by a board of directors; but that section, in my judgment, does not confer upon them the power to incur a debt by purchasing their own stock at par, when its value may be far below that figure, or to purchase at all and mortgage their road and make their stockholders personally liable. It was never the intention

or meaning of the statute that the affairs of the company should be "managed and conducted" in that way. The legislature does not empower the directors thus to barter away and waive the rights of the stockholders.

But it is insisted that if the written contract *was* wholly void the plaintiffs are entitled to recover on the subsequent express promise to pay for their work and materials and stock, as a new and valid contract. It has been already remarked that where a contract grows out of, or is connected with, an illegal act, or if it is in part connected with it, it is tainted with the illegality of the transaction from which it sprung, and no recovery can be had. (11 *Wheat.* 258. 4 *Comst.* 449.) Every new agreement entered into for the purpose of carrying into effect any of the unexecuted provisions of a previous illegal contract is void. Now what is the express promise on which the plaintiffs rely, for a recovery in this case? Nothing but the resolution declaring the acceptance of the road, and the amount due Kingsland & Co., and Woodworth, as in full of all claims, to the day of its passage, on the 9th of July, 1851. Both parties declaring that this settlement is for building the road as per contract, to be paid *by a mortgage as per contract*, clearly intending to carry out the original contract and nothing more, and carefully guarding against the idea of a new debt or a new liability. It was in fact a mere liquidation of the amount found due *under the contract*, and a resolution to execute the mortgage secured by it. There was no promise to pay, independent of it, and the plaintiffs cannot establish their claim without its aid. The same objections apply to any argument based upon an implied assumpsit.

These views dispose of this case in favor of the defendants. But if the contract should be deemed a valid one, I do not see how the plaintiffs can recover in the present action, or sustain the verdict of the jury. They do not ask the court to compel an execution of the mortgage. They do indeed aver that the defendants have neglected and refused to execute the mortgage, as provided in the contract, for said debt, and they ask for one-fifth part of the amount for which the mortgage was to be executed, with interest; or they claim to recover under what has been

Barton *v.* Port Jackson and Union Falls Plank Road Co.

called their common counts, for work, labor and services, and materials found, and an account stated. But this agreement is denied, and not proved. The agreement, if legal and binding, was for a mortgage only. The evidence shows repeated offers on the part of the defendants to execute the mortgage, without a bond, and a refusal to receive the stock assigned, unless Kingsland & Co. and Woodworth would take the mortgage as offered. This was refused. The averment of refusal to convey is not only not proved; it is actually disproved. It is said in answer to this that the defendants never drew up a mortgage and tendered it to the plaintiffs. The plaintiffs did not put their refusal to accept on the ground that there was no tender. The offer was refused, because the directors could not execute a bond with the mortgage and make the corporation or the corporators personally liable for the debt.

No *tender* of a mortgage was necessary; the plaintiffs having absolutely refused to receive one. No demand of a mortgage and refusal to execute has been pretended. (*Crary* v. *Smith,* 2 *Comst.* 60. *Connelly* v. *Pierce,* 7 *Wend.* 129. *Fuller* v. *Hubbard,* 6 *Cowen,* 13. *Blood* v. *Goodrich,* 9 *Wend.* 68.)

In every view which I have taken of this case, I can discover no ground on which a recovery can be sustained. There must be judgment for the defendants, with costs.

[FULTON GENERAL TERM, January 2, 1854. *Hand, Cady* and *C. L. Allen,* Justices.]