Johnson, Chief Judge.
The second defense states that Thompson was treasurer of Hartford township from April, 1871, to April, 1872 ; that Bennett was elected his successor in April, 1872 ; was qualified and acted as successor of Thompson, who had in his hands about $800 of the school funds, which should have been paid over to Bennett, yet plaintiffs, in violation of law, and in aid of Thompson in the disregard of his duty, induced Thompson to keep-said money, and give therefor the note sued on, all of which was in contravention of the statutes and against public policy, and void.
The reply says this $800 was school funds belonging to district No. 5 in said township; that said district became an independent school district and claimed this money; that litigation between the township and the independent district was pending as to the ownership of this money; that at the time the note sued on was given the common pleas had rendered judgment for the amount and interest against the township and in favor of the district, and it had appealed to the district court where the action was then pending. The question was whether the treasurer held said money for the independent district or the township, and the judgment appealed from being against the town *326 ship for the amount and interest, said board of education, in good faith, let said moneys remain in said Thompson’s hands, and took the note sued on, with surety, thus placing the money at interest pending the litigation.
Another reply is substantially the same, but adds, that, owing to this litigation and while it was pending, to wit, on the 5th of September, 1871, Thompson agreed to pay interest on said money, if the board would allow him to use it in his individual business, which they did, without note or surety, until April 22,1872, when his term as treasurer expired, and this note with surety was given, extending the time for repayment ten months, in order to earn interest.
The litigation was subsequently determined in favor of plaintiffs, who. brought this action on the note to recover the amount due thereon, in order to restore it to the treasury.
The facts in brief, then, are, that, pending this litigation between the township and the independent district as to this money, to wit, September 5, 1871, by verbal agreement, the board allowed the treasurer to take and use this money in his private business, on his agreeing to pay interest, and that at the expiration' of his term, April 22, 1872, instead of requiring that he pay the amount over to his successor’, and in order to keep the money on interest, extended the loan teu months, taking the note sued on with these defendants as sureties.
Being sureties, these defendants have no equities against them, and have the clear right to'assert the illegality of this transaction, if it be illegal.
This verbal agreement, made September 5,1871, by which the money was loaned to their treasurer, and the further action of April 22, 1872, of extending the loan ten months, and taking this note, was clearly in contravention, not only of the 29th section of the school law (S. & C. 1357), requiring the treasurer to deliver over to his successor all the moneys, etc., but also, of the 15th section of the independent treasury law (2 S. & C. 1610). Said section provides: *327 “ That if any officer or other person charged with the collection, safe-keeping, transfer, or disbursement of the public money, or any part thereof, belonging to the state, or any county or township, or organized city or village in this state, shall convert to his own use, or the use of any other person or persons, body corporate, association, or party, whatever, in any way whatever, or shall use by -way of investment in kind of security, stock, loan, property, land, or merchandise, or in any other manner or form whatever, or shall loan with or without interest, to any company, corporation, or association, or individual, any portion of the public money, . . . received, controlled, or held by him for safe-keeping, transfer, or disbursement, or in any other way or manner, or for any other purpose, or if any person shall advise, aid, or in any manner participate in such act, every such act shall be deemed and held in law to be an embezzlement of so much of the said moneys ... as shall be thus converted, used, invested, loaned, deposited, or paid out as aforesaid, which is hereby declared to be a high crime and misdemeauor, . . . and on conviction, sentenced to imprisonment in the penitentiary not less than one, nor more than twenty-one years.”
The transactions of the treasurer and the board, by which this money was taken from the treasury, and loaned upon this note, amounted to embezzlement under this statute. Such an act is punishable by fine and imprisonment in the penitentiary. The purpose of this and other statutes, as was said of similar acts then in force, in State v. Butler, 3 Ohio St. 321, is to operate on the agents, officers, and others having charge of the public moneys, and deter by fines and penalties, the commission of such acts. The power is denied them to make such contracts. If they can not make, they can not ratify or adopt such a contract.
There is not, as in the Butler case, any power in the principal to adopt or ratify such illegal contract.
It was there held, that as the state, by its legislation, made the law to prevent such loans, it could, by legislative act, ratify and adopt a contract thus made and sue omit. No such *328 power is conferred, on a board of education to defeat positive enactment. That the board might sue for and recover the money from the treasurer, and replace it in the proper custody, to secure its return after, or take security for the repayment of money illegally loaned, we do not doubt, and the fact that the individual members of the board were particeps criminis, would be no bar. That would be an action not on the illegal contract, but in repudiation of it. So, under like circumstances, and for the same reason, the board might secure public moneys already embezzled and in danger of being lost, by taking a note and security.
The promise to refund moneys illegally taken from the treasury is valid, but a promise which is the consideration for the illegal act of embezzlement, and which procures it to be done is void. No action can be brought on such a promise.
We hold: That the verbal understanding with the treasurer, in September, that he might use the money in his business if he would pay interest, and the note in suit taken by the board at the expiration of the tei*m of office of sueh treasurer, for a continuance of sueh loan upon interest, at a time the money should have been turned over to his successor in office, was contrary to public policy, and in violation of express statute, which the board had no power to ratify or adopt, and that no action can he maintained on sueh illegal contract. Spurgeon v. McElwain, 6 Ohio 442 ; States. Findley, 10 Ohio, 54 ; Bloom v. Richard, 2 Ohio St. 387; Rossman v. McFarland, 9 Ohio St. 387; Butler v. The State, 3 Ohio St. 321; Vining v. Bucker, 14 Ohio St. 331; Huber v. German, 16 Ohio St. 371; Delaware v. Andrews, 18 Ohio St. 49 ; Comm’rs Hancock Co. v. First National Bank (Supreme Court Commission, January 30, 1878, not yet reported); Beaman v. Tugnot, 5 Sandf. 153; Bartons. Pt. Jackson Road, 17 Barb. 397 ; Smith v. City of Albany, 7 Lansing, 14; 2 Parsons on Contracts, 747-767.
The judgment of the court of common pleas is affirmed.