DUVAL *v.* WELLMAN.

(*Common Pleas of New York City and County, General Term.*   May 18, 1888.)

CONTRACTS — VALIDITY—MARRIAGE BROKAGE CONTRACT — RIGHT TO RECOVER MONEY PAID UNDER.

   Plaintiff's assignor, voluntarily and without solicitation, deposited money with defendant, a marriage broker, to secure his assistance in obtaining a husband, under an agreement that if she married any one introduced to her by defendant the money was to be his, but if at the end of a certain time she was willing to give up all acquaintances made through his agency, the money should be returned.   *Held,* that the contract being against public policy, and both parties being *in pari delicto,* the plaintiff could not recover.

Appeal from general term of city court.

Action brought by John A. K. Duval, assignee of Mrs. E. Guion, against H. B. Wellman, to recover money paid defendant by Mrs. Guion for the purpose of procuring her a husband.   The trial judge directed a verdict for the defendant, and the city court, at a general term, overruled his order denying plaintiff's motion for a new trial, from which decision the defendant appealed.

Argued before LARREMORE, C. J., and ALLEN and BOOKSTAVER, JJ.

*Newhall & Fitzpatrick,* for appellant.   *Wm. H. Munday,* for respondent.

BOOKSTAVER, J.   The pleadings in the action are not made a part of the case.   But from the case as made it appears that the plaintiff's assignor, Mrs. E. Guion, became a patron of the defendant's matrimonial bureau in June, 1886, and deposited with him a five-dollar registration fee, in consideration of his introducing her to some one whom she would be willing to marry, and which defendant promised to return to her upon a certain contingency; that Mrs. Guion continued such patron until August 15, 1887, during which time she was introduced by defendant to 30 or 40 men.   None of them suited her.   On June 2, 1887, she went to defendant, apparently without solicitation on his part, and told him she was aware that people worked harder the more money they received, and thereupon voluntarily deposited with him $50, for which defendant gave her the following paper: "JUNE 2, 1887.   Due Mrs. Guion from Mr. Wellman, August 15th, if at that time she is willing to give up all acquaintance with gentlemen who were introduced in any manner by H. B. Wellman.   If Mrs. Guion marry a gentleman introduced to her, then $50 is due Mr. Wellman from Mrs. Guion.   [Signed]   H. B. WELLMAN.   E. GUION."   During the 18 months she was defendant's patron both he and his wife acted in a perfectly honorable way towards her as far as she knew at the time.   On the 16th or 17th of August, 1887, Mrs. Guion, not having become suited, demanded back the $50, and defendant refused to return it; whereupon her assignor commenced this action.   These facts, and others not now necessary to state, appear on the trial.   The judge directed the jury to find a verdict in favor of the defendant, upon the ground that the contract was void as against public policy, and the money deposited could not be recovered back.   A motion was made for a new trial and denied, from which an appeal was taken to the general term of that court, on which appeal an order denying a new trial was reversed and a new trial ordered.   From the last order the present appeal was taken to this court.

The attention given to this case in the court below, and the very elaborate discussion of the principles of law given it by the judges of that court, have greatly facilitated us in arriving at a conclusion.   It is the unanimous opinion of these judges that the contract in question is void as against public policy.   They also agree that if the parties are *in pari delicto* there can be no recovery.   They differ only as to whether the parties to the contract are, in fact, equally guilty, and, if not, whether an action at law may be maintained to recover back the money.   On behalf of the plaintiff it is urged that Mrs. Guion is "a poor, confiding, and deluded woman;" that "she was tricked by the defendant into the belief that he would get for her the husband she wanted;" that she was induced by improper influences to pay him the $50; that this was obtained from her by trick and device, and a "species of constructive fraud;" and it is even claimed that the defendant, in making the contract in question, engaged in a sort of kidnaping (of Mrs. Guion) "into a state of conjugal servitude."   To discover any of these facts in the evidence one must read between the lines, or they must be inferred from the nefarious nature of the business.   From the evidence it appears Mrs. Guion must have been of full age, or she could not have assigned her claim.   She had been married before, and, as far as disclosed, labored under no legal disability.   She had been a patron of defendant's establishment for more than a year before she made the contract.   She, and not the defendant, proposed making the contract.   There is no evidence in the case of any "improper influence," deceit, fraud, false pretenses, or misrepresentations on the part of defendant, which induced her to pay him the money.   On the contrary, she says the defendant "acted in a perfectly honorable way towards her."   Apparently, she was just as free to act, and as capable of acting, as the defendant, as is shown by the fact that of the 30 or 40 "gentlemen" introduced to her, she "would have none of them."   She continued to patronize defendant's establishment to the end of the period fixed in the contract; and it had been fully performed

as to her, except in repaying the money as agreed. We therefore think she was as much in the wrong as the defendant.

As was well said in the court below, "courts of justice are not required in any way to aid the enforcement of an illegal contract, or to lend their assistance in any respect to an illegal transaction. The parties being *in pari delicto,* the courts will leave them where they find them, and not attempt to balance equities. Their action is controlled by a principle having no respect to the equities between the parties, but upon the solid ground and broad foundation of a wise and prudential governmental policy. See *Rose* v. *Truax,* 21 Barb. 361; *Schermerhorn* v. *Talman,* 14 N. Y. 94, 102, 141; *Tracy* v. *Talmage,* Id. 162, 182; *Pratt* v. *Adams,* 7 Paige, 615; *Barton* v. *Plank Road Co.,* 17 Barb. 397. The aid of the law is not withheld from any considerations of the rights or equities of the parties as between themselves, but solely to prevent an infringement of the public law or policy of the state. *Sedgwick* v. *Stanton,* 14 N. Y. 289. This does not fall within that class of cases where, although both parties are in the wrong, yet by reason of some peculiar advantage taken by the one over the other they are not *in pari delicto,* in which case the law will grant relief for the less guilty; as in the case of "cappers in," "bunco steerers," "mock auctioneers," usurers, etc. Mrs. Guion was just as capable of acting as the defendant, and was not deceived by him. On the other hand, she bargained for the very thing which was contrary to law. The case in principle is more nearly analogous to gambling, wager, and lottery contracts, where, it is true, actions may be maintained to recover back money paid or lost, although both parties are equally in the wrong, but this is because laws have been enacted expressly permitting such recovery; and this, we think, an additional reason why there should be none in this case, where there is no law permitting it.

Mr. Justice Story, in his Equity Jurisprudence, §§ 260, 263, says that money paid on a marriage brokage contract may be recovered back in a court of equity, and cites several cases; but these were where money had been paid secretly for the purpose of bringing about a marriage with a designated person, and the rights of third parties were involved. Judge WILLARD, in discussing this question, rests his argument upon the assumption that such contracts are underhand agreements, and constructively fraudulent as to third persons, or the public; and in support of his position cites the same cases. But in this case the contract did not affect third persons, was not underhand or secret, and both parties were entirely free to act, and well understood what they were doing. To permit plaintiff to recover would be to aid one of two equally in the wrong. It is unnecessary to discuss the question of the most effectual way of breaking up such demoralizing institutions, as that is a subject for legislative consideration, and not to be determined by the courts.

For these reasons, and those given in the court below, we think the order of the general term should be reversed, and the order of the special term affirmed, with costs. As the question is a novel one, and of public importance, we think it should be determined by the court of last resort, and leave is therefore given to appeal to the court of appeals.